Common Pleas Court of Hamilton County

WILLIAM A. WINSTEL ET AL V. AMERICAN LOAN CO.

Decided May 31, 1933.

*Earl B. Cameron,* for plaintiffs.

*Matthews & Matthews,* and *Lester G. Saeman,* for defendant.

SCHWAB, J.

This cause was submitted to the court upon the petition of the plaintiffs and the answer and cross-petition of the defendant, and the testimony introduced in support of each. The plaintiffs in this case set forth that on January 10, 1931, they borrowed the sum of $500.00 from the Norwood Finance Company, and in consideration of such loan the plaintiffs jointly and severally executed and delivered to the defendant two promissory notes payable to the Norwood Finance Company, secured by two chattel mortgages, one note in the sum of $300.00 bearing interest at the rate of 3% per month, and the other in the sum of $200.00 bearing

interest at the rate of 8% per annum. They charge that on the $300.00 note $8.85 excess interest was charged and paid, that on the $200.00 note an excess of $1.11 interest was charged and paid, and that the sum of $27.03 on this note had not been properly credited to the principal of the note. Wherefore, they pray judgment against the defendant, the American Loan Company, for the sum of $317.90, and pray that the promissory notes and mortgages be declared null and void and be cancelled of record.

The defendant filed, an answer and cross-petition in which it admits that in consideration of a loan of $500.00 the plaintiffs executed the notes and mortgages described in the petition. The defendant denies that excess interest in the amounts set forth in the petition was received by the defendant, but admits that interest in the amount of $2.45 was received in error and discovered by the defendant subsequent to the institution of this action, and credited as a principal payment on the $300.00 note, leaving a balance of $297.55.

The defendant denies that it illegally appropriated the sum of $27.03 on the $200.00 note, but admits an item of $1.00 excess interest, which it claims was received through error.

By way of cross-petition the defendant sets up the two notes described in the petition and sets forth the acceleration clause in both of these notes, and by reason of the default in the payment of principal and interest, it asks judgment against the plaintiffs on the $300.00 note in the sum of $297.55, with interest at 3% per month from April 13, 1932, and on the $200.00 note prays judgment in the sum of $63.40 with interest at the rate of 8% per annum from October 17, 1931. Defendant also asks for foreclosure of their mortgages.

The evidence offered in this case discloses that the two notes upon which this action is based were executed in conformity to the law of this state. The testimony further reveals that the defendant, complying with the law, furnished the plaintiffs with a receipt card on each loan, and as the payments on principal and interest were made noted the same on these cards and returned the cards to the plaintiffs. In a number of instances where a payment of interest was

made the same amount was noted in the column provided for that purpose on the card, showing a payment on the principal, but the balance due on the loan in each instance was correct. The instances were clearly mistakes.

However, there was interest received on both notes in excess of the legal rate of interest provided by law for each note. These loans were made under what is known as the Small Loan Act. Section 6346-5, General Code, provides for interest on small loans at the rate of 3% per month.

Section 6346-5-a, General Code, provides as follows:

"Provided, however, that upon the amount in excess of three hundred dollars ($300.00) for principal owing to the licensee for any such loan, purchases or furnishing guaranty or security, no licensee shall directly or indirectly charge, contract for or receive any interest or consideration greater than at the rate of eight per cent per annum, which shall include all charges, shall not be paid in advance and shall be computed on unpaid monthly balances, without compounding interest or charges. The foregoing eight per cent per annum limitation of rate herein made shall also apply to any licensee who permits any person, as borrower, or an endorser, guarantor, surety for, or as spouse of any borrower, to owe directly or contingently, or both, to the licensee at any time the sum of more than three hundred dollars ($300.00) for principal.

"If interest, consideration or charges in excess of those permitted by this act shall be charged, contracted for or received, the contract and all the papers in connection therewith shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever."

In the case of *Wessel* v. *Timberlake*, reported in 95 O. S. 21, the Small Loan Act was held to be constitutional, on the ground that it was a proper subject for the exercise of the police power of the General Assembly of Ohio. Judge Wanamaker in writing the opinion of the court observed:

"The taking of interest for the loan of money, or at least taking excessive interest, has been regarded with abhorrence from the earliest times. We are told that such usury was prohibited by the early laws of the Chinese and the Hindus, and by the Koran. Moses announced it as follows: 'If thou lend money to any of my people that is poor by thee, thou shalt not be to him as an usurer, and neither shalt thou lay upon usury.' Exodus XXII, 25."

In the case of *State ex rel Downing, Prosecuting Attorney,* v. *Powers,* reported in 180 N. E. Rep., page 647, syllabi 2 and 3 read as follows:

"2. Statute authorizing charges to 3 per cent per month on chattel and salary loans held valid and not unreasonable exercise of police power. (Section 6346-5, General Code).

"3. Statutes regulating loans on chattels and salaries held valid as having uniform operation."

In writing the opinion of the court in this case Chief Justice Marshall made the following observation:

"Section 6346-5, General Code, provides for a maximum interest charge of 3 per cent per month. To those who can borrow at 6 per cent per annum this seems oppressive and even shocking. This court may not determine the wisdom of the law. Being a political question the court may not interfere, unless it is contrary to public policy. If the general purpose of the statute is to promote the public welfare, the court may only inquire whether it reasonably tends to do so. The extent of its benefits is not justifiable. \* \* \* Those who have no collateral except chattels and unearned wages cannot borrow upon as favorable terms as those who are able to offer unquestioned security. This situation is created, not by the statute law, but by an economic law."

It is said that Abraham Lincoln, in 1832, when but twenty-three years of age, and a candidate for election to the General Assembly of Illinois, attacked the prevailing high interest rate on small loans and pledged himself, if elected, to put through a law making such rates illegal and punishable.

The first real attempt to make a serious and exhaustive study of the subject before attempting a reform was begun by the Russell Sage Foundation in 1907 and 1908, when it financed preliminary investigation and the publication of the report on the salary and chattel loan business. Following this investigation and study a bill was drafted requiring all lenders charging more than the banking rate to submit to license and frequent examination by the state banking department. The bill authorized licensed lenders to charge on loans of less than $300.00 an interest rate of 2% monthly. After a brief experience with this law the rate of interest was increased to 3½% per month and prohibited the charging of any further fees in connection with the loan.

It was said by those in favor of this measure that it reflec-. ted a desire to do justice to both borrower and lender, but it recognized the fact that small loan agencies, unlike banks,. have no deposits and must do business on their own capital; that small loans on chattel mortgages and wage assignments require more investigation than bank loans; that installment repayments necessitate a large bookkeeping and collecting system. This bill, with minor changes, has become the law of at least eighteen states including Ohio.

One of the questions presented by counsel for the plaintiff in the case at bar is that by virtue of the operation of Section 6346-5-A, General Code, the licensee is restricted on a loan in excess of $300.00 to a return of more than 8% per annum on the entire loan. This contention is based upon the language of this section as follows:

"The foregoing 8% per annum limitation of rate herein made shall not apply to any licensee who permits any person as borrower * * * to owe directly * * * to the licensee at any time the sum of more than $300.00 for principal."

If the contention of counsel is correct then the charge of 3% per month on the note for $300.00 would constitute usury, and the entire contract and all papers in connection therewith would be void and the licensee would have no right to any principal, interest or charges whatsoever.

Section 6346-5, General Code, as already pointed out, provides for a rate of interest on loans of those holding a license to do business from the state of Ohio at the rate of 3% per month. The opening sentence of Section 6346-5-A, General Code, which is a subdivision of the original section, reads:

"Provided, however, that upon the amount in excess of $300.00 for principal owing to the licensee for any such loan * * * no licensee shall directly or indirectly charge * * * any interest * * * greater than at the rate of 8% per annum."

After the careful reading of this section the court reaches the conclusion that the intention of the legislature as expressed therein was to give to the licensee the privilege of exacting 3% per month upon any loan not exceeding $300.00, and if the loan exceeded the sum of $300.00, the

amount of the excess of such loan over $300.00 could earn but 8% per annum. No doubt the legislature had in mind that an individual might make several loans from the same licensee, and it therefore wisely provided that the 8% limitation would apply where the borrower was indebted at any time to the licensee for more than $300.00. Thus, as the court construes this section, if an individual borrowed from a licensee the sum of $300.00, he would be required to pay interest at the rate of 3% per month; if the following day he borrowed another $300.00, although it was an independent loan and had no connection with the loan made the day before, the provisions of Section 6346-5-A, General Code, would prohibit the licensee from exacting a rate of interest higher than 8% per annum.

The other question therefore presented by the pleadings and evidence in this case is whether or not the lender in receiving interest in excess of the rate allowed by law does so at his peril.

The court is convinced from the testimony offered in this case that interest in the sum of $2.45 on the $300.00 note, and interest in the sum of $1.00 on the $200.00 note was received by the defendant herein through mistake. The testimony reveals that as the payments of principal and interest were made a young lady employed by the defendant computed the same on the balance then due the defendant by means of a mechanical device. If the lender receives this interest in excess of the legal rate at his peril, then the contract and all the papers in connection therewith shall be void under the statute.

On an examination of the authorities the court is unable to find that this section has been construed in this state. From an examination of the authorities in other states, where similar statutes are in force, the court finds that in the state of Tennessee the law on this subject is as follows:

"If fees, interest or charges in excess of those so permitted are charged, contracted for or received, the contract or loan shall be void, and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever."

In the case of *O. H. May Co.* v. *S. M. Anderson,* 156 Tenn. 216, the court held in syllabi 4 and 6 as follows:

"4. Forfeitures not being favored by law, penalty provided in the Small Loan Act being so drastic, it cannot be assumed that such a provision shall work a forfeiture for mere inadvertence or error.

"6. The conclusions drawn from the Small Loan Act as a whole negative the intention to exact a penalty therein provided, except for willful violation of its provisions."

In that case two loans were made to the defendant in the sum of $75.00 each and an action was brought by the plaintiff to recover the balance due. The testimony in that case revealed that twenty-nine cents per month, or a total of $7.94 had been received in excess of the legal interest.

In the state of South Carolina, Section 6740 provides:

"Any person or corporation who shall receive, or contract to receive, as interest any greater amount   *   *   *, and where any amount so charged or contracted for has been actually received by such person or corporation, he or she, or they, shall forfeit double the amount received in respect to interest.   *   *   *"

This act was construed by the Supreme Court of South Carolina in the case of *Rushton* v. *Woodham,* 68 S. C., 110, syllabus 3 reading as follows:

"Plea of usury not sustained by evidence in this case. Collection of excess of interest by mistake, or other error, against the intent of the party, will not support a charge of usury."

Numerous cases have been called to the court's attention holding that violations of the Loan Act need not be willful, but upon an examination of the same the court finds that in each case the contract itself called for interest and charges in excess of those allowed by law.

The court finds in the case at bar that the lender was properly licensed according to law and that the two contracts conformed strictly to the provisions of the law and every requirement imposed upon the lender or licensee by the law had been complied with.

The court therefore reaches the conclusion that the last paragraph of Section 6346-5-A, General Code, was not intended by the legislature to void all contracts where the violation of the same is clearly and unmistakably the result

of error, and manifestly against the intent of the parties to the contract.

The court therefore finds that the claims set forth in the plaintiffs' petition are not valid and judgment will therefore be entered on the petition in favor of the defendant.

Coming now to the cross-petition, the court finds that there is due the defendants from the plaintiffs herein the sum of $297.55 with interest at the rate of 3% per month from April 18, 1932, on the $300.00 note, and that there is now due the sum of $63.40 with interest at the rate of 8% per annum from October 17, 1931, on the $200.00 note; that the plaintiff being in default for payment of interest and principal as set forth in the two notes, the defendant is entitled to a foreclosure of the mortgages given as security for each note.